# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA
# FRESNO DIVISION

| | |
|---|---|
| MICHAEL GUTIERREZ,<br><br>　　　　　　　　　Petitioner,<br>　vs.<br>DERRAL ADAMS, Warden,<br>　　　　　　　　　Respondent. | CASE NO. 1:07-CV-01874-MLH<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

On November 30, 2007, Michael Gutierrez ("Petitioner"), a California prisoner represented by counsel, filed this Petition for Writ of Habeas Corpus with the United States District Court for the Central District of California pursuant to 28 U.S.C. § 2254. (Doc. No. 2.) On December 27, 2007, the Central District transferred the case to the Eastern District of California. (Doc. No. 1.) On April 28, 2008, Respondent filed his Answer. (Doc. No. 8.) Petitioner filed a Traverse on May 1, 2008. (Doc. No. 18.) On November 25, 2008, the Eastern District reassigned the case to the Southern District of California for review. (Doc. No. 10.)

For the reasons below, the Court DENIES the Petition for Writ of Habeas Corpus.

///
///
///
///

# Background

**A.     Procedural History.**

Petitioner was convicted by a jury of first-degree attempted murder in violation of Cal. Penal Code §§ 667 and 187(a).  The jury also found a special allegation of a weapon enhancement under Cal. Penal Code §§ 12022.5 and 12022.7. (Doc. No. 2, App. B.) Petitioner was committed to prison on December 28, 1990.  His minimum eligible parole date was April 17, 2000.  (Doc. No. 2, App. A at 1.) Petitioner has had multiple parole hearings and in each case has been denied parole.  (Doc. No. 2 at 5.)

# Discussion

**A.     Standard of Review.**

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") amended 28 U.S.C. § 2254(d) to provide the following standard of review applicable to state court decisions:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

For Petitioner to obtain federal habeas relief, Petitioner must satisfy either § 2254(d)(1) or § 2254(d)(2).  The United States Supreme Court has stated that a federal court may grant habeas relief under the "contrary to" clause of § 2254(d)(1) if the state court either (1) "arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law," or (2) "decides a case differently than [the United States Supreme Court] has on a set of

materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 403 (2000).

A federal court may grant habeas relief under the "unreasonable application" clause of § 2254(d)(1) "if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 412-13. "Unreasonable application" must be objectively unreasonable to the extent that the state court decision is more than merely incorrect or erroneous. Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

Moreover, even if a state court decision is contrary to United States Supreme Court precedent or rests on an unreasonable determination of facts in light of the evidence, Petitioner must show that such error in the state court's ruling caused substantial or injurious prejudice. See Penry v. Johnson, 532 U.S. 782, 795 (2001) (quoting Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993)). The state court's factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Because AEDPA creates a highly deferential standard towards state court rulings, state court decisions should be given the benefit of the doubt. Womack v. Del Papa, 497 F.3d 998, 1001 (9th Cir. 2007).

**B.     Determination of Unsuitability for Parole.**

Petitioner claims that the Parole Board's determination that Petitioner was unsuitable for parole violated his due process rights because the Parole Board improperly relied upon various factors, such as the commitment offense, prior criminal history, behavior while incarcerated, and absence of suitable parole plans. (Doc. No. 2 at 5-6.) In response, Respondent points to evidence to support the Board's determination that Petitioner is not presently suitable for parole, and therefore the Court denies the Petition.

In Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 441 U.S. 1, 7 (1979), the United States Supreme Court found a constitutionally protected liberty interest in an eligibility determination and parole release date in the Nebraska statutory scheme in that case. The Court specifically noted that statutory schemes for parole dates and eligibility determinations may have unique structures and language, and therefore any determination of

1  a liberty interest should be done on a case-by-case basis. 442 U.S. at 12. In <u>McQuillion v.
2  Duncan</u>, 306 F.3d 895 (9th Cir. 2002), the Ninth Circuit Court of Appeals noted that Cal. Penal
3  Code § 3041(b) created a constitutionally protected liberty interest because of the mandatory
4  language used. 306 F.3d at 902. <u>See</u> <u>also</u> <u>Sass v. California Bd. of Prison Terms</u>, 461 F.3d
5  1123, 1128 (9th Cir. 2006). Cal. Penal Code § 3041(b) states, "The panel or board shall set a
6  release date" unless it determines that certain considerations warrant a longer incarceration
7  period. <u>See</u> <u>also</u> <u>In Re Dannenberg</u>, 34 Cal. 4th 1061, 1087 (Cal. 2005) (noting that the
8  mandatory language of Cal. Penal Code § 3041 is qualified and not absolute).

9  When reviewing a state parole board's parole suitability determination, courts cannot
10 speculate about what might occur in future parole proceedings; rather, federal habeas review
11 is limited to the record presented. <u>Sass v. California Bd. of Prison Terms</u>, 461 F.3d 1123, 1129
12 (9th Cir. 2006). The United States Supreme Court in <u>Superintendent v. Hill</u>, 472 U.S. 445
13 (1974), stated that some evidence must be present in the record to support a revocation of good
14 time credits. 472 U.S. at 454. "Some evidence" does not require a re-examination of the entire
15 record or a re-evaluation of the credibility of witnesses, but merely looks to see if there is any
16 evidence that supports the underlying decision. <u>Id.</u> at 455-56. Respondent contends that the
17 "some evidence" standard is inapplicable because <u>Hill</u> pertained to good-time credits, whereas
18 the present case pertains to setting a parole date, and therefore <u>Hill</u> does not constitute well-
19 established Supreme Court precedent under 28 U.S.C. § 2254. (Doc. No. 8 at 5-6.) The Ninth
20 Circuit has rejected this argument, noting that while the "some evidence" standard may have
21 been developed in the context of good-time credits in <u>Hill</u>, the standard is applicable to the
22 parole process as well. <u>Sass</u>, 461 F.3d at 1128-29.

23 California law provides several factors for the Parole Board to consider when
24 determining if a prisoner is suitable for parole. Cal. Penal Code § 3041(b) states that a parole
25 date shall be set unless "[the Board] determines that the gravity of the current convicted
26 [offense], or the timing and gravity of current or past convicted [offenses], is such that
27 consideration of the public safety requires a more lengthy period of incarceration." Moreover,
28 Cal. Code. Regs. tit. 15, § 2402 provides other factors for consideration of parole suitability,

1  including the commitment offense, previous record of violence, unstable social history,
2  psychological factors, and institutional behavior. Cal. Code Regs. tit. 15, § 2402 requires that
3  the Parole Board weigh various factors in favor of and against paroling an inmate. Moreover,
4  while certain circumstances alone may be insufficient to deny an inmate parole, the Board must
5  consider all relevant factors together to determine if the inmate will pose an unreasonable risk
6  of danger to society if released. Cal. Code Regs. tit. 15, § 2402(a) and (b). The record reflects
7  that the Board took these factors into consideration when making its decision, and that there is
8  evidence in the record to support the Board's determination of ineligibility for parole at this
9  time.

10 **1.     Behavior During Incarceration.**

11      The Parole Board noted in denying parole that Petitioner had been involved in at least
12 eight altercations while incarcerated for the present offense. (Doc. No. 2, App. A at 39-40.)
13 See Cal. Code Regs. tit. 15, § 2402(c)(6). Some of these altercations involved an assault on an
14 inmate with a weapon, battery on an inmate, and destroying state property. (Doc. No. 2, App.
15 A at 41.) In addition, Petitioner retained his gang membership while in prison until 1998.
16 (Doc. No. 2, App. A at 41.) Violent and destructive behavior while incarcerated reflects and
17 on-going course of conduct of violent behavior, and the Board can consider on-going criminal
18 behavior in its deliberations. See Cal. Code Regs. tit. 15, § 2402(c)(6).

19 **2.     Commitment Offense Demonstrated a Disregard for Human Life.**

20      The Board also indicated that Petitioner's commitment offense was carried out in a
21 callous manner that demonstrated a disregard for human life. (Doc. No. 2, App. B at 67-68.)
22 See Cal. Code Regs. tit. 15, § 2402(c)(1)(D). Petitioner drove to his victim's house armed with
23 a handgun over a dispute about a shotgun that the victim had previously taken. Petitioner was
24 accompanied by two friends, and they waited outside of the victim's residence because the
25 victim was not yet home. The victim eventually arrived in a car driven by his father, and the
26 victim's mother and niece were also in the car. As the victim walked towards Petitioner,
27 cursing at Petitioner and telling him to leave, Petitioner pulled out his weapon and discharged
28 several shots that hit the victim in the arm, chest, elbow, stomach, and mouth. Once the victim

1 had fallen to the ground, Petitioner walked up to the victim and fired two more shots into him.
2 One of the bullets paralyzed the victim from the waist down, although it is not clear whether
3 a bullet from the first or second round of shots caused the paralyzation. (Doc. No. 2 at 2; Doc.
4 No. 2, App. A at 10-11.) The Board concluded that the manner of carrying out the crime was
5 callous and went beyond the mere minimum required for conviction because Petitioner fired
6 additional shots after the victim had fallen and committed the crime in front of the victim's
7 family. (Doc. No. 2, App. A at 67-68.) Moreover, given that the value of the shotgun in dispute
8 was worth approximately $200, the Board determined that the motive for the crime was trivial.
9 (Doc. No. 2, App. A at 68.) See Cal. Code Regs. tit. 15, § 2402(c)(1)(E).

10 Petitioner contends that, compared to other California cases which rejected a finding of
11 callousness, Petitioner's case does constitute a callous crime evidencing a disregard for human
12 life, nor does Petitioner's motive constitute a "trivial motive" compared to similar crimes.
13 (Doc. No. 2 at 10-15.) The Board indicated that the commitment offense was callous and that
14 Petitioner's motive was trivial. (Doc. No. 2, App. A at 68.) These factors are found in Cal.
15 Code Regs. tit. 15, §§ 2402(c)(1)(B), (D), and (E).

16 There is evidence in the record that demonstrates Petitioner's crime was committed in
17 a calculated and callous manner. See Cal. Code Regs. tit. 15, §§ 2402(c)(1)(B) and (D).
18 Petitioner went to his victim's house with a loaded weapon and two friends. Upon discovering
19 the victim was not home, Petitioner waited for his return. Moreover, once the victim was lying
20 injured on the ground from the first round of shots, Petitioner walked up to the victim and fired
21 two more shots into him. (Doc. No. 2 at 2; Doc. No. 2, App. A at 10-11.) Petitioner's actions
22 demonstrate that, to some degree, the attempted killing was done in an execution-style manner
23 because the victim was already lying helplessly on the ground, and therefore was committed
24 in a callous manner. See Cal. Code Regs. tit. 15, §§ 2402(c)(1)(B) and (D).

25 Petitioner argues that cases such as In re Lee, 143 Cal. App. 4th 1400 (Cal. Ct. App.
26 2006), and In re Weider, 145 Cal. App. 4th 570 (Cal. Ct. App. 2006), demonstrate that,
27 comparatively, Petitioner's crime is not callous. (Doc. No. 2 at 10-15.) In re Lee states that a
28 callous crime is one that is particularly cruel because all murders entail some degree of

callousness. 143 Cal. App. 4th at 1409. In re Weider, along similar lines, notes that a callous crime is one that demonstrates an exceptionally callous disregard for human suffering. 145 Cal. App. 4th at 586-88. There is evidence in the record to reflect that Petitioner's crime demonstrated a callous disregard for human suffering, namely the additional shots fired into the victim while the victim lay prostrate on the ground.

Petitioner further argues that the motive for the crime was not more trivial than other similar crimes. (Doc. No. 2 at 10-15.) See Cal. Code Regs. tit. 15, §§ 2402(c)(1)(E). Petitioner relies on In re Scott, 119 Cal. App. 4th 871 (Cal. Ct. App. 2004) for the proposition that all motives are trivial when the end result is the taking of a life, and that a trivial motive must comparatively be materially less significant than those motives that would conventionally drive people to commit the offense. 119 Cal. App. 4th at 893-94. The court in In re Scott observed that Scott's offense, which was murder of his wife's drug dealer and lover, was not trivial because Scott's marriage was deteriorating, his wife became addicted to drugs, and his wife was having an affair with her drug dealer. 119 Cal. App. 4th at 894. The court noted that Scott faced some degree of provocation, and suffered from long-term stress, and therefore the motive for the crime was not trivial within the meaning of the statute. 119 Cal. App. 4th at 894. There is evidence to show that Petitioner's motive, however, was trivial because the entire attempted murder resulted from a dispute over a $200 shotgun, took place over a short time, and Petitioner did not even bother to discuss the matter with the victim prior to the shooting.

Petitioner also contends that reliance upon the circumstances surrounding the commitment offense violate due process by effectively transforming a sentence with parole into a sentence without parole. (Doc. No. 2 at 18-21.) Petitioner's reliance on the state and federal cases cited in the Petition is misplaced, however, because each case emphasizes that sole reliance on the commitment offense may at some point violate notions of due process. See generally Biggs v. Terhune, 334 F.3d 910 (9th Cir. 2003); Irons v. Casey, 479 F.3d 658 (9th Cir. 2006). In the present case, however, the Board relied on several factors in denying parole, not just on the commitment offense, and therefore the proposition that the cited cases espouse is inapposite to the facts of the present Petition.

1    Moreover, Petitioner's argument that at his 2006 parole hearing Petitioner had served
2 over nine years in excess of his seven-year minimum life prison term is equally without merit.
3 Petitioner asserts that using the commitment offense to deny parole to an inmate who has served
4 his minimum sentence raises due process issues, and relies on cases such as Biggs and Irons in
5 support of his proposition. (Doc. No. 2 at 22-24.) As previously noted, the Board considered
6 several factors in denying parole. While Petitioner may have served nine years in excess of his
7 minimum sentence, Petitioner overlooks the fact that during the first eight years of his
8 incarceration he was a member of a gang and was involved in at least eight incidents, including
9 assaultive and destructive behavior. (Doc. No. 2, App. A at 41.) Petitioner can hardly argue
10 that the Board relied solely on his commitment offense because the record clearly shows that
11 his violent behavior continued well into his incarceration.

12    **3.    Inadequate Parole Plans.**

13    The Parole Board also concluded that Petitioner's proposed parole plans were
14 inadequate. (Doc. No. 2, App. A at 69.) See Cal. Code Regs. tit. 15, § 2402(d)(8). Petitioner
15 planned to return to live in an area six to seven miles from where he previously lived, and the
16 Board feared that this might lead to recidivism. (Doc. No. 2, App. A at 44-46, 69.) Moreover,
17 the Board expressed concern that Petitioner's employment plans, including travel to and from
18 his work, were not sufficiently developed to constitute viable plans. (Doc. No. 2, App. A at
19 47-49.)

20    Petitioner contends that even if the concern over his parole plans was genuine, denial of
21 parole was still improper; instead, Petitioner contends, a slight delay in a parole date would
22 have been more appropriate to allow Petitioner to make more amenable plans. (Doc. No. 2 at
23 17.) Petitioner cites In re Andrade, 141 Cal. App. 4th 807 (Cal. Ct. App. 2006) for the
24 proposition that Cal. Code Regs. tit. 15, § 2402(d)(8) only requires a parolee to have marketable
25 skills upon release or realistic plans for release. (Doc. No. 2 at 17.) Andrade supports
26 Petitioner's contention in that the language "realistic plans" under California law focuses on the
27 practicality of the plans. See Andrade, 141 Cal. App. 4th at 815-17. However, Andrade also
28 elaborated upon a state's interpretation of its own law, and failure to follow that interpretation

is an error of state law not cognizable in federal habeas review. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Rather, federal courts review whether a state court conviction or sentence violated the Constitution, laws, or treaties of the United States. Id.

Moreover, while Cal. Penal Code § 3041 does create a liberty interest protected by due process, it is a qualified right. See In Re Dannenberg, 34 Cal. 4th 1061, 1087 (Cal. 2005) (noting that the mandatory language of Cal. Penal Code § 3041 is qualified and not absolute). In the present case, as was the case in Andrade, the Parole Board found several grounds that, taken together, warranted a parole denial. Because the lack of suitable parole plans was but one of several factors considered in denying parole, and because the alleged error on this particular ground was one of state law, basing a claim to overturn the Board's decision on this one factor lacks merit.

### 4. Previous Juvenile Criminal History.

Another factor considered by the Parole Board was Petitioner's prior criminal history. See Cal. Code Regs. tit. 15, § 2402(c)(2). The record shows that Petitioner had a previous juvenile criminal history, including taking a vehicle without the owner's consent in1986, grand theft auto and burglary in 1986, selling or furnishing marijuana in 1986, possession of marijuana for sale in 1988, and robbery in 1989. (Doc. No. 2 at 3; Doc. No. 2, App. A at 24-28.) Moreover, Petitioner was involved in gang activity as a juvenile and at the time of the offense. (Doc. No. 2 at 2; Doc. No. 2, App. A at 14.)

Petitioner contends that his record does not reflect previous crime that injured or attempted to injure another person prior to the commitment offense, and therefore his juvenile criminal history should be disregarded because it was not violent and was remote in time. (Doc. No. 2 at 16.) Even if the juvenile criminal history was non-violent, the record reflects that Petitioner had an increasingly violent criminal history that ultimately culminated in the current incarceration. This is supported by the nature of the commitment offense and the subsequent gang activity, assaults, and batteries while in prison. Petitioner's juvenile offenses may have occurred a while ago, but this does not mean that they are entirely removed from the Board's consideration, especially since prior criminal behavior was part of a course of conduct of

1  increasingly violent criminal behavior. The Board must weigh all factors in determining
2  suitability for parole, Cal. Code Regs. tit. 15, § 2402(a) and (b), and a prior criminal history,
3  especially combined with continued violence and gang activity while in prison, is one factor
4  that the Board can examine when making its determination.

5  In denying parole, the Board emphasized that, given the various factors for and against
6  parole, evidence of a sustained improvement was not quite enough, especially given prior
7  incidents in prison, and that further progress needed to be made for a suitability determination.
8  (Doc. No. 2, App. B at 70-71.) The record clearly demonstrates that the Board's decision to
9  deny parole was based on several pre- and post-commitment factors, and that cumulatively the
10 Board determined that a longer period of improvement was necessary. The Court concludes
11 that the Board's determination does not violate the Constitution, laws, or treaties of the United
12 States, nor does it involve the unreasonable application of United States Supreme Court
13 precedent. See 28 U.S.C. § 2254(d). Because there is evidence to support the Board's present
14 denial of parole, the Court denies the Petition for Writ of Habeas Corpus. See Sass, 461 F.3d
15 at 1128-29.

**Conclusion**

17 For the reasons stated above, the Court DENIES the Petition for Writ of Habeas Corpus.
18 The Court also DENIES a Certificate of Appealability.

19 IT IS SO ORDERED.

20 DATED: July 6, 2009

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

COPIES TO:
All parties of record.